# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BECKLEY DIVISION

AMERICAN AUTOMOBILE
INSURANCE COMPANY,

                Plaintiff,

v.                                  CIVIL ACTION NO.  5:12-cv-08183

JOHN P. SMITH, et al.,

                Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiff, American Automobile Insurance Company ("AAIC"), brought this action against John P. Smith and Robert Smith ("the Smith Defendants") and Robert Rufus, Jack Tolliver, and Greenbrier Property Group L.L.C. (collectively known herein as "the GPG Defendants")[1] seeking a declaratory judgment that AAIC is not obligated to defend or indemnify the Smith Defendants against claims asserted by the GPG Defendants in an underlying state court action involving an alleged fraudulent scheme to purchase real estate at a price that exceeded the market value. (Complaint for Declaratory Judgment (Document 1)). This Court has previously directed the entry of default against all Defendants. (Order (Document 25)). AAIC now moves for default judgment against all Defendants by asking this Court to declare as a matter of law that it does not have to defend or indemnify the Smith Defendants under its errors and omissions liability insurance policy. (Plaintiff American Automobile Insurance Company's Motion for Default Judgment ("Pl.'s Mot.") (Document 27)).

---

1  Together with Rufus and Tolliver, John and Robert Smith are members of the Greenbrier Property Group, LLC.

After careful consideration of AAIC's motion, the memorandum in support (Document 28), the relevant policy language and the allegations in the underlying state court action, the Court finds that AAIC **is not required** to defend or indemnify John and Robert Smith.

*I.*

John Smith and Robert Smith seek the defense and indemnification of John Smith's Sponsored P&C Insurance Agents Errors and Omissions Liability Insurance Policy ("Ins. Policy"), Policy No. 144215 09 05, for claims asserted against them in a state court civil action, *Rufus v. Greenbrier Sporting Club Dev. Co. Inc.,* in the Circuit Court of Greenbrier County, West Virginia. The GPG Defendants initiated the underlying state lawsuit on May 11, 2012, against the Greenbrier Sporting Club Development Company, Inc., United Bank, Inc., Melinda Smailes, Stan McQuade, Thelma McQuade, James Staton and the Smith Defendants by alleging that the defendants engaged in fraudulent conduct to sell certain real property located in the White Sulphur District, Greenbrier County, West Virginia, to the GPG at a "grossly inflated price."[2] (Pl.'s Mot. Ex A., Complaint, *Rufus v. Greenbrier Sporting Club Dev. Co., Inc*., Civil Action No. 12-C-107 (Document 27-1)).

According to the state court plaintiffs, the Smith Defendants presented the Greenbrier Sporting Club property investment opportunity to Rufus, Tolliver and GPG, represented that the property was a "unique 'no risk' investment opportunity," asserted that the fair market value of the property exceeded $900,000, and advised that a $110,000 membership in the Sporting Club was mandatory with the sale of the real property. Additionally, the Smith Defendants allegedly

---

2  Indeed, in a previous version of the state case, John and Robert Smith were listed as party plaintiffs against the named defendants. (*See* Pl.'s Mot. Ex C., Complaint ¶¶ 1-5, *Smith v. Greenbrier Sporting Club Dev. Co., Inc*., Civil Action No. 11-C-516 (Document 27-3)). However, on June 14, 2012, the Cabell County Circuit Court dismissed the first state action for improper venue. (Pl.'s Mot. Ex D. Final Order (Document 27-4)).

2

provided the plaintiffs with promotional materials about the property, represented that it could be relisted and sold in less than eighteen months, advised that United Bank had assured 100% financing of the property and membership fee, limited to 90% of the property's appraised value, and that the purchasing contract was contingent upon that financing.  According to the state court plaintiffs, the Smith Defendants knew or should have known that the actions of the remaining defendants, including those performing the property appraisal, were fraudulent and negligent because the purchase price, appraisal and subsequent loan were in excess of the actual value of the land.  The state plaintiffs also allege that the Smiths had a fiduciary duty to use reasonable care in their investigation of the purchased property, but that this duty was breached, which has resulted in their injury and damage.  The plaintiffs also allege that various fraudulent misrepresentations were made by the remaining defendants to induce them into purchasing the real estate.  Consequently, in addition to the claim asserted against the Smiths, the plaintiffs assert claims of fraud in the inducement, constructive fraud, breach of fiduciary duty, negligent misrepresentation, breach of duty to use due diligence and fair dealing, and civil conspiracy against the defendants.[3]

Upon the Smiths' assertion of coverage, AAIC filed this action on November 28, 2012. On April 15, 2013, upon review of the docket in this matter, the Court directed the entry of default against Defendants.  AAIC now moves pursuant to Rule 55(b) of the Federal Rules of Civil Procedure for a default judgment.

*II.*

The Declaratory Judgment Act authorizes a district court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or

---

3   The state court plaintiffs seek to recover compensatory and punitive damages, attorney fees, litigation costs, pre and post judgment interest, an injunction to prohibit the defendants from collecting money fraudulently loaned and from engaging in the complained of conduct, and other damages allowable by law.

could be sought." 28 U.S.C. § 2201. District courts have discretion in deciding whether or not to make such a declaration of rights "in a case of actual controversy." *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co*., 139 F.3d 419, 421 (4th Cir. 1998); 28 U.S.C. § 2201. The relief sought in a declaratory judgment action "is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Penn-America Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937)). "It is well established that a declaration of parties' rights under an insurance policy is an appropriate use of the declaratory judgment mechanism." *United Capitol Ins. Co. v. Kapilloff*, 155 F.3d 488, 494 (4th Cir. 1998); *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 375 n.3 (4th Cir. 1994) (considering that an insurance company's action seeking a declaration that it has no duty to defend or indemnify an insured against a third party's tort claim generally qualifies as an actual controversy.)

The question for the Court in consideration of this declaratory judgment action is "whether the insurer had a duty to defend [and/or indemnify] under the terms of the insurance policy." *Aetna Cas. & Sur. Co. v. Pitrolo*, 342 S.E. 2d 156, 161 (W. Va. 1986). The "[d]etermination of the proper coverage of an insurance contract when the facts are not in dispute[, as it is in this case,] is a question of law." *Tennant v. Smallwood*, 568 S.E.2d 10, 14 (W. Va. 2002) (citations and quotation omitted). By and large, an insurer's duty to defend "is broader than" its duty to indemnify, since an insurer typically must defend its insured if a claim against the insured 'could, without amendment, impose liability for risks the policy covers.'" *Bowyer v. Hi-Lad, Inc*., 609 S.E.2d 895, 912 (W. Va. 2004). Under West Virginia law, a liability insurer's "duty to defend is

4

tested by whether the allegations in the plaintiff's complaint are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy." (*Pitrolo*, 342 S.E. 2d at 160) (citations omitted). The complaint "need not 'specifically and unequivocally make out a claim within the coverage[]'" to invoke the duty to defend. (*Id*.). "However, [if] the causes of action alleged in the plaintiff's complaint are entirely foreign to the risks covered by the insurance policy, then the insurance company is relieved of its duties under the policy." *Bowyer*, 609 S.E.2d at 912.

It has long been recognized that "since insurance policies are prepared solely by insurers, any ambiguities in the language of insurance policies must be construed liberally in favor of the insured." *Pitrolo*, 342 S.E.2d at 160 (citations omitted); *Horace Mann Ins. v. Leeber*, 376 S.E.2d 581, 584 (W. Va. 1988) (this principle applies to the insurer's duty to defend and to pay). Therefore, "any question concerning an insurer's duty to defend under an insurance policy must be construed liberally in favor of an insured where there is any question about an insurer's obligations." (*Id*.) However, "[w]here the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." *Keffer v. Prudential Ins. Co. of America*, 172 S.E.2d 714, 715 (W. Va. 1970). Finally, "if part of the claims against an insured fall within the coverage of a liability insurance policy and part do not, the insurer must defend all of the claims, although it might eventually be required to pay only some of the claims." *Leeber*, 376 S.E.2d at 584.

*III.*

This Court's examination of whether AAIC has a duty to defend and/or indemnify the Smiths fundamentally requires an evaluation of both the pertinent portions of the errors and

5

omissions policy and the underlying allegations against them. To date, no opposition to this motion has been filed. However, a review of the liability coverage and the products covered by the policy handedly establishes that the Smiths are not entitled to coverage under the policy.

Of import, the errors and omissions policy at issue provides that AAIC will:

> pay on the **Agent's** behalf all **Loss** which such **Agent** is legally obligated to pay as a result of a **Claim** first made against such **Agent** or its **Agency/Agency Staff** and reported to **Us** during the **Policy Period** in accordance with Section **VI. Conditions I.2.**, provided that such **Claim** is for a **Wrongful Act** in the rendering of or failure to render **Professional Services** in connection with a **Covered Product** if that **Wrongful Act** occurs wholly after the **Retroactive Date**.

(Ins. Policy, Section I. Coverage A.1.).[4]  AAIC does not dispute that the Smith Defendants are agents or staff members of the agency covered by the policy. However, AAIC challenges

---

4   Relevant to this provision are the following defined terms:

> C. **Claim**, either in the singular or plural, means:
> 1. Any written demand **You** receive for compensatory damages or services for a **Wrongful Act**, including but not limited to, the institution of arbitration proceedings against **You**, or
>
> 2. Any civil proceeding seeking compensatory damages against **You** for a **Wrongful Act**, commenced by the service of a complaint or similar pleading.
>
> All Claims against the **Insured** arising out of the same **Wrongful Act** or **Interrelated Wrongful Acts** whether such **Wrongful Acts** involve just the Insured or others for whose acts the **Insured** may be legally responsible, or the same or different claimants, will be considered one **Claim**. All **Claims** arising out of **Interrelated Wrongful Acts** will be considered first made at the time the **earliest** such **Claim** was made against the **Insured**.
>
> * * *
>
> Q. **Wrongful Act**, either in the singular or plural, means:
> 1. Any actual or **alleged** negligent act, error or omission, or negligent misstatement or misleading statement by any **Agent** or its **Agency/Agency Staff** in the rendering of or failure to render Professional Services; or
>
> 2. Any actual or alleged negligent **Personal Injury** arising out of any **Agent's** or its **Agency/Agency Staff's** rendering of or failure to render Professional Services.

6

whether the underlying dispute is a Covered Product under the Policy. According to the insurance policy, a Covered Product is

> 1. Property and casualty insurance coverage including workers compensation insurance offered by a **Product Provider**, including **Product Providers** other than the **Sponsoring Company**
>
>> a. Provided that the **Sponsoring Company** does not write the **Covered Product**. For the purpose of this policy a **Covered Product** that the **Sponsoring Company** does not write means any **Covered Product** other than one for which rates, rules, and forms are shown in the Agents Portfolio, the Agents Technical Guides, and any other written or oral material provided to all agents in a given state or region by the **Sponsoring Company**;
>>
>> b. Where the **Insured** has no contract or appointment for such **Covered Product** with the subsidiary or affiliate of the **Sponsoring Company** that provides such **Covered Product**;
>>
>> c. Provided that the **Covered Product** is offered by Nationwide Agribusiness Insurance Company or Farmland Mutual Insurance Company and the **Covered Product** is deemed to be brokerage business by the **Sponsoring Company**.
>
> 2. Life Insurance (other than Variable Life Insurance Products), Accident and Health Insurance, Disability Income Insurance or Fixed Annuities, including Individual Retirement Annuities;
>
> 3. Group Employee Benefit Plans or Disability Plans, provided such Plans are fully insured at all times, but not including Group or Ordinary Pension or Profit Sharing Plans or
>
> 4. Group or Ordinary Pension or Profit Sharing Plans, Individual Retirement Accounts, Keogh Plans, 401a, 401k, 403b, 408k, 408p, 501b or 503b Plans, and fixed retirement annuities.
>
> **Covered Product** does not include any plan or arrangement

---

(Ins. Policy, Section III. Definitions C & Q).

>operating as a Multiple Employer Welfare Arrangement (as defined in the Employer Retirement Income Security Act of 1974 including any amendments thereto).

(Ins. Policy, Amended Covered Product Definition 144618 04 12 Endorsement (Document 27-2) at 23). The Financial Products: Mutual Funds, Variable Products and Securities Extension 144630 04 09 amended the Policy's definition for a Covered Product as follows:

>**Covered Product**, either in the singular or plural, also means the following products, provided, however, that the products have already been approved in writing for sale or offered for sale by the broker dealer(s) listed below:
>
>a.   Variable products, including but not limited to Variable Annuities and Variable Life Insurance, sold or serviced by the **Insured** as a **Registered Representative**;
>
>b.   Mutual Funds registered with the Securities and Exchange Commission and sold or serviced by the **Insured** as a **Registered Representative**; or
>
>c.   Any **Securities** sold or serviced by the **Insured** as a **Registered Representative**.

(Ins. Policy, Financial Products: Mutual Funds, Variable Products and Securities Extension 144630 04 09 (Document 27-2) at 40). For the purpose of this endorsement, the term Securities

>has the same meaning as that term in the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Company Act of 1940, and the Investment Advisers Act of 1940, and any amendments thereto; provided, however, **Securities** shall not include:
>
>1.   Any Mutual Funds registered with the Securities and Exchange Commission;
>2.   Any promissory notes;
>3.   Any unregistered Securities; or
>4.   Any telephone leasing

(*Id*. at 41.) Because the allegations in the underlying state litigation concern a real estate transaction involving an inflated purchase price, rather than property and casualty insurance, life accident or health insurance, an employee benefit plan or pension, profit sharing plans, IRAs or an annuity, the disputed transaction cannot be found to be a Covered Product under the policy. Moreover, although the GPG Defendants alleged in their state case that they purchased the real estate based, in part, on their ability to re-sale the property in less than eighteen months, the transaction cannot be found to fall within the definition of Covered Products under the Financial Product Endorsement. The disputed property purchase, while loosely described as "an investment" in the state court complaint, does not involve securities, as that term is defined by the policy[5], mutual funds or variable insurance products. The nature of the state court action is grounded in fraudulent tort claims related to the purchase of real property. Such claims are "entirely foreign to the risks covered by the insurance policy,[consequently] then the insurance company is relieved of its duties under the policy." *Bowyer*, 609 S.E.2d at 912. Accordingly, assuming that the Smiths' conduct constituted a Wrongful Act under the policy, the Court finds

---

5   The Financial Products Endorsement defines the term "securities" in part based on the definition of that term in the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Company Act of 1940 and the Investment Advisors Act of 1940.  Accordingly, that term means

> any note, stock, treasury stock, security future, security-based swap, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

15 U.S.C. § 77b(a)(1); *see also* 15 U.S.C. §§ 78c(a)(10), 80a-2(a)(36), 80b-2(a)(18).

that the Smiths are not entitled to the defense and indemnity because their conduct did not involve a Covered Product.[6] Therefore, AAIC is entitled to a declaratory judgment that it has no obligation to defend or indemnify the Smiths.

*IV.*

Consequently, upon consideration of the foregoing, the Court does hereby **ORDER** that Plaintiff American Automobile Insurance Company's Motion for Default Judgment (Document 27)) be **GRANTED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: July 1, 2013

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

---

6   Because of the disposition herein, the Court need not consider AAIC's further argument that the Smiths did not provide Professional Services to a Client (as those terms are used in the policy) inasmuch as any Professional Service performed must have been in connection with a Covered Product.